

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA    )
    )
    )    No. 07 CR 574-7
vs.    )    Judge Ruben Castillo
    )
KARL OSTLER LEE    )

## PLEA AGREEMENT

1.    This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and defendant KARL OSTLER LEE, and his attorneys, LEIGH D. ROADMAN and DANIEL T. HARTNETT, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Agreement have agreed upon the following:

### Charge in This Case

2.    The superseding indictment in this case charges defendant with mail fraud in violation of Title 18, United States Code, Section 1341.

3.    Defendant has read the charge against him contained in the superseding indictment, and that charge has been fully explained to him by his attorney.

4.    Defendant fully understands the nature and elements of the crime with which he has been charged.

FILED
1-22-08
JAN 2 2 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## Charge to Which Defendant is Pleading Guilty

5.     By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to Count Four of the superseding indictment. Count Four charges the defendant with mail fraud, in violation of Title 18, United States Code, Sections 1341.

### Factual Basis

6.     Defendant will plead guilty because he is in fact guilty of the charge contained in the superseding indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

Beginning by at least in or about 1992, and continuing through at least in or about December 2002, at Des Plaines, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant KARL OSTLER LEE, together with co-defendants Anthony Lee, Saverio Barone, Amirali Rehmat, Lloyd Lee and Kathreen Jones and others, devised, intended to devise, and participated in a scheme and artifice to defraud the Gas Technology Institute and its predecessor company, the Gas Research Institute, and related entities (collectively "GTI") and others, of money and property and of the intangible right to the honest services of its employees, and to obtain money and property from GTI and others by means of materially false and fraudulent pretenses, representations, promises and material omissions.

On or about August 22, 2001, for the purpose of executing the above-described scheme and attempting so to do, he did knowingly place and caused to be placed, in an

2

authorized depository for mail matter in Illinois, for delivery by the United States Postal Service, an envelope addressed to Molecular Thermoengines, Inc., 4120 Sherburne Court, Norman, OK, and containing a false and fraudulent Oster Inc. invoice, namely invoice number 72601, reflecting a balance due of approximately $34,200, all in violation of Title 18, United States Code, Sections 1341.

Specifically, defendant Karl Ostler Lee's father, defendant Anthony Lee, was employed at GTI and had certain responsibility there for awarding contracts to outside companies. In and around 1992, defendant Anthony Lee told defendant Karl Ostler Lee to establish a company. Defendant Anthony Lee explained that GTI had hazardous waste disposal research to be outsourced, and that he (defendant Anthony Lee) intended to direct some of this research to defendant Karl Lee, who had just graduated from college. After defendant Karl Lee established this business, which he called Ostler Inc., defendant Anthony Lee told defendant Karl Lee that he (Anthony Lee) had directed contracts to his brother (defendant Lloyd Lee's) company.

From time to time thereafter, defendant Anthony Lee instructed defendant Karl Lee to prepare invoices under the name Ostler Inc., and to submit them to defendant Lloyd Lee's company for payment. On each occasion, defendant Anthony Lee instructed defendant Karl Lee what particulars to include on the invoice including the amount of payment due. Defendant Karl Lee understood that he was to make it falsely appear that he and/or Ostler Inc. had performed subcontract research work for defendant Lloyd Lee's company. After he

3

prepared the invoices according to his father's instructions, defendant Karl Lee mailed them

to his uncle, defendant Lloyd Lee, in envelopes addressed to his uncle's company in Norman,

Oklahoma. In each instance, after mailing the invoice, Karl Lee would receive payment in

the invoiced amount from his uncle, defendant Lloyd Lee, although as both well-knew,

defendant Karl Lee had performed no service for defendant Lloyd Lee's company or for GTI.

Defendant Karl Lee understood that by undertaking to mail invoices and receive company

checks in this manner, he was concealing the true nature of these payments from the ultimate

contracting party, namely GTI.

Sometime after defendant Karl Lee began sending fraudulent invoices to defendant

Lloyd Lee, his father informed him that he (defendant Anthony Lee) had arranged for his

daughter – the defendant's sister Kathreen Jones – to receive contracts from GTI in a similar

way to Lloyd Lee's business. Defendant Karl Lee knew that his sister was a pharmacist, and

that although she, too, established a company at their father's instruction, she did not perform

any research work for GTI pursuant to these contracts. Defendant Karl Lee was also aware,

based on what defendant Anthony Lee and defendant Kathreen Jones told him, that GTI paid

monies to defendant Kathreen Jones's company.

From time to time after he learned that his sister was receiving GTI monies, defendant

Karl Lee submitted false Ostler Inc. invoices to companies owned by his sister Kathreen

Jones although he well-knew that neither he nor his company had performed any subcontract

work for her. In each instance, defendant Anthony Lee instructed defendant Karl Lee to

4

create such a fraudulent invoice and specified the details of this invoice including the payment due amount. Shortly after mailing each invoice to his sister via her company, defendant Karl Lee received a company check issued by defendant Kathreen Jones's company in the amount set forth on the false and fraudulent invoice. Defendant Karl Lee understood that by undertaking to mail invoices and receive company checks in this manner, he was concealing the true nature of these payments from the ultimate contracting party, namely GTI.

Sometime in or around 1996, defendant Anthony Lee instructed defendant Karl Lee to establish a second company. Defendant Karl Lee did so, calling this company Glen Valley. Thereafter, in the same manner described above and again at his father's direction, defendant Karl Lee submitted false invoices to companies owned by defendant Kathreen Jones and defendant Lloyd Lee to make it appear that his company Glen Valley had performed sub-contract work for these other companies, when as defendant Karl Lee well-knew, his company had not done so. Thereafter, he received checks in payment of these invoices.

Defendant Karl Lee submitted false and fraudulent invoices for purported sub-contract work to companies owned by defendants Lloyd Lee and others owned by Kathreen Jones in this manner up through approximately December 2002. In total, defendant Karl Lee received -- through payments made to his companies Ostler Inc., and Glen Valley -- approximately $431,500, in payment on these false and fraudulent invoices.

In or around 1997, defendant Karl Lee's company Glen Valley received approximately $111,000 from Company A, which represented a portion of monies that Company A received from GTI pursuant to a contract. Defendant Karl Lee received this money from Company A due to the influence of defendant Anthony Lee. Moreover, defendant Karl Lee was well-aware that neither he nor his company Glen Valley did any work for Company A or with respect to Company A's contract with GTI. Of the approximate $111,000 he received from Company A, defendant Karl Lee paid over approximately $55,000 to defendant Peter Barone. At the time, defendant Karl Lee, who had worked previously at GTI during college and had met several of defendant Anthony Lee's co-workers, knew that defendant Peter Barone worked at GTI and had authority over various research areas. Defendant Karl Lee paid over this money to defendant Peter Barone at his father's direction. Further, defendant Karl Lee, at his father's direction, concealed the true nature of this payment insofar as he wrote the check payable to defendant Barone's company, rather than to him personally.

In or about 1999, Glen Valley received approximately $66,000 directly from GTI. Defendant Karl Lee did not submit any contract or proposal to GTI to obtain this money, nor does he know what this money was in payment for. Defendant Karl Lee was told by defendant Anthony Lee that he was going to receive this money, and was further instructed that he should pay over the majority of it in three equal payments of $20,400 to defendants Anthony Lee, Peter Barone, and Amirali Rehmat. Defendant Karl Lee knew that all three were then employed by GTI, and that by directing GTI money to them in this manner, he was

concealing their receipt of GTI funds from GTI. Defendant Karl Lee acted on his father's instructions.

In total, between in or about 1992 and in or about December 2002, defendant Karl Lee and his companies Ostler Inc. and Glen Valley received approximately $608,459 from GTI directly and indirectly as a result of the efforts of his father defendant Anthony Lee and the other defendants as described above.

The facts set forth herein are merely a summary of the facts that defendant Karl Lee agrees the government will be able to prove at trial, and that provide an adequate factual basis for defendant Karl Lee's plea of guilty. It does not contain all the facts known to defendant Karl Lee about the offense, other individuals involved therein, or related matters.

7.      The foregoing facts are set forth solely to assist the court in determining whether a factual basis exists for defendant's plea of guilty, and are not intended to be a complete or comprehensive statement of all the facts within defendant's personal knowledge regarding the charged crime and related conduct.

## Maximum Statutory Penalties

8.      Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

a.      A maximum sentence of 5 years' imprisonment. This offense also carries a maximum fine of $250,000, or twice the gross gain or gross loss resulting from that

offense, whichever is greater. Defendant further understands that the judge also may impose a term of supervised release of at least two years but not more than three years.

       b.     Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court. The Court also may order restitution to any persons as agreed by the parties.

       c.     In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty or restitution imposed.

### Sentencing Guidelines Calculations

    9.     Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

    10.    For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

       a.     **Applicable Guidelines**. The Sentencing Guidelines to be applied in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2007 Guideline Manual.

       b.     **Offense Level Calculations.**

i.    The base offense level for the charge in the superseding indictment is 6, pursuant to Guideline §2B1.1(a)(2);

ii.    The parties agree that the loss to the victims in this case was approximately $600,000, which is between $400,000 and $1,000,000, and that the defendant's offense level consequently is increased by 14 levels pursuant to Guideline 2B1.1(b)(1)(H).

iii.    Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline §3E1.1(a), including by furnishing the U.S. Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

iv.    In accord with Guideline §3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline §3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

c.       **Criminal History Category.**  With regard to determining defendant's criminal history points and criminal history category, based on the facts known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

d.       **Anticipated Advisory Sentencing Guidelines Range.**  Therefore, based on the facts now known to the government, the anticipated offense level is 17, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory Sentencing Guidelines range of 24 to 30 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

e.       Defendant and his attorney and the government acknowledge that the above Guideline calculations are preliminary in nature and based on facts known to the parties as of the time of this Plea Agreement.  Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation.  Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

f.       Both parties expressly acknowledge that while none of the Guideline calculations set forth above are binding on the Court or the Probation Office, certain components of those calculations – specifically, those set forth above in subparagraphs i, ii,

10

iii, and iv of this paragraph -- are binding on the parties, and it shall be a breach of this Plea Agreement for either party to present or advocate a position inconsistent with the agreed calculations set forth in the identified subparagraphs.

g.    Defendant understands that with the exception of the Guideline provisions identified in this subparagraph as binding on the parties, the Guideline calculations set forth above are non-binding predictions, upon which neither party is entitled to rely, and are not governed by Fed.R.Crim.P.11(c)(1)(B). Errors in applying or interpreting any of the Sentencing Guidelines (other than those identified in this subparagraph as binding) may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Plea Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Plea Agreement, on the basis of such corrections.

## Cooperation

11.    Defendant agrees he will fully and truthfully cooperate with the United States Attorney for the Northern District of Illinois in any matter in which he is called upon to cooperate. This cooperation shall include providing complete and truthful information in any investigation and pre-trial preparation and complete and truthful testimony in any criminal, civil or administrative proceeding. Only the United States Attorney for the Northern District

of Illinois may require defendant's cooperation pursuant to this Plea Agreement. Defendant agrees to the postponement of his sentencing until after the conclusion of his cooperation.

## Agreements Relating to Sentencing

12.    At the time of sentencing, the government shall make known to the sentencing judge the extent of defendant's cooperation. If the government determines that defendant has continued to provide full and truthful cooperation as required by this plea agreement, then the government shall move the Court, pursuant to Guideline §5K1.1 , to depart downward from the applicable Guideline range. Defendant understands that the decision to depart from the applicable guidelines range rests solely with the Court. The government will make no recommendation regarding the sentence to be imposed.

13.    If the government does not move the Court, pursuant to Sentencing Guideline §5K1.1, to depart from the applicable Guideline range, as set forth above, the preceding paragraph of this plea agreement will be inoperative, and the Court shall impose a sentence pursuant to the Sentencing Guidelines without any downward departure for cooperation pursuant to §5K1.1. Defendant may not withdraw his plea of guilty because the government has failed to make a motion pursuant to Sentencing Guideline §5K1.1.

14.    Regarding restitution, it is the government's position that the total amount of restitution owed to the victim in this case is $608,459, minus any credit for funds repaid prior to sentencing. The parties acknowledge and agree that pursuant to Title 18, United States Code, § 3663A, the Court must order defendant, together with any jointly liable co-

defendants, to make full restitution in the amount outstanding at the time of sentencing. It is the defendant's position that his restitution obligation was satisfied by settlement with the victim GTI and, in any event, he should receive credit with respect to restitution for funds paid prior to sentencing by defendant and any jointly-liable co-defendants. Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing.

15.    Defendant agrees to pay the special assessment of $100 at the time of sentencing with a check or money order payable to the Clerk of the U.S. District Court.

### Presentence Investigation Report/Post-Sentence Supervision

16.    Defendant understands that the United States Attorney's Office in its submission to the Probation Department as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the United States Probation Office of the nature, scope and extent of defendant's conduct regarding the charge against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to the issue of sentencing, including the nature and extent of defendant's cooperation.

17.    Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the United States Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the Probation Officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a

reduction for acceptance of responsibility pursuant to Guideline §3E1.1 and enhancement of his sentence for obstruction of justice under Guideline §3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

18.    For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the United States Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release to which defendant is sentenced.  Defendant also agrees that a certified copy of this Plea Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Plea Agreement

19.    This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 07 CR 574.

20.    This Plea Agreement concerns criminal liability only.  Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver or release by the

United States or any of its agencies of any administrative or judicial civil claim, demand or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

21.     Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a.     **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i.     The trial could be either a jury trial or a trial by the judge sitting without a jury. Defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.     If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

15

iii.    If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt. The jury would have to agree unanimously before it could return a verdict of guilty or not guilty.

iv.    If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v.    At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi.    At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii.    At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

16

b.    **Waiver of appellate and collateral rights.**    Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, defendant knowingly waives the right to appeal his conviction and any part of the sentence, including any  term of imprisonment and fine within the maximums provided by law, and including any order of restitution or forfeiture (or the manner in which that sentence was determined), in exchange for the concessions made by the United States in this Plea Agreement.  In addition, defendant also waives his right to challenge his conviction and sentence, or the manner in which the sentence was determined, in  any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness, or ineffective assistance of counsel, which relates directly to this waiver or to its negotiation.

c.    Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights. Defendant understands that he has the right to have the criminal charge in the superseding indictment brought within five years of the last of the alleged acts constituting the specified violation. By signing this document, defendant knowingly waives any right to have the charge in the superseding indictment

17

brought against him within the period established by the statute of limitations. Defendant also knowingly waives any defense or claim based upon the statute of limitations or upon the timeliness with which the charge in the superseding indictment was brought.

## Other Terms

22.     Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

## Conclusion

23.     Defendant understands that this Plea Agreement will be filed with the Court, will become a matter of public record and may be disclosed to any person.

24.     Defendant understands that his compliance with each part of this Plea Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute

defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

25.   Should the judge refuse to accept defendant's plea of guilty, this Plea Agreement shall become null and void and neither party will be bound thereto.

26.   Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement to cause defendant to plead guilty.

27.    Defendant acknowledges that he has read this Plea Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.


AGREED THIS DATE: ____1/22/08____


_____
PATRICK J. FITZGERALD
United States Attorney


_____
CAROLYN F. MCNIVEN
Assistant U.S. Attorney


_____
KARL OSTLER LEE
Defendant


_____
LEIGH D. ROADMAN
Attorney for Defendant


_____
DANIEL T. HARTNETT
Attorney for Defendant